**2014-1648**

# United States Court of Appeals for the Federal Circuit

ANTARES PHARMA, INC.,

*Plaintiff – Appellant,*

*v.*

MEDAC PHARMA INC., and MEDAC GMBH,

*Defendants – Appellees.*

*Appeal from the United States District Court for the District of Delaware In Case No. 1:14-cv-00270 Judge Sue L. Robinson*

## NON-CONFIDENTIAL REPLY BRIEF FOR PLAINTIFF-APPELLANT ANTARES PHARMA, INC.

Imron T. Aly
Richard J. Hoskins
Sailesh K. Patel
Joel M. Wallace
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 6600
Chicago, IL 60606
(312) 258-5500

*Counsel for Plaintiff-Appellant*

FILED: AUGUST 22, 2014
CORRECTED: SEPTEMBER 19, 2014

## TABLE OF CONTENTS

***Page***


I. INTRODUCTION ........................................................................ 1

II. ARGUMENT ........................................................................ 3

A. The Rule Against Recapture Is Inapplicable to Reissue Claims Covering Disclosed But Unclaimed Features Of The Original Patent. ........................................................................ 4

1. Prior Precedent Supports Antares's Position That The Recapture Rule Does Not Apply Here. ........................................ 5

a. *The rule against recapture does not apply when the reissue claims cover a disclosed but previously unclaimed invention.* ........................................ 5

b. *Unlike in* Mostafazadeh *and* Youman, *the '846 reissue claims do not simply reclaim the originally claimed invention.* ........................................ 6

2. The Needle Cover Claimed In The Original Patent Does Not Subject Antares's Reissue Safety Features To The Recapture Rule. ........................................ 7

3. Antares Has Accordingly Shown A Likelihood of Success on the Merits, Warranting Reversal. ........................................ 9

4. The Prosecution History Shows that Recapture is Inapplicable. ........................................ 14

5. Antares Has Shown A Likelihood of Success Even Under *Hester*. ........................................ 16

B. The "Original Patent" Doctrine Is not an Alternative Basis to Affirm ........................................ 19

C. Medac's Claim Construction Position Is Incorrect ........................................ 24

1. The '846 Reissue Patent Claims Should Not Be Limited to Jet Injectors. ........................................ 24

2. Even If Limited To A Jet Injector, The District Court Did Not Use The Patent's Proper, Explicit Definition. ....................25

D. Antares Faces Irreparable Harm If Medac Is Allowed To Launch Its Infringing Device ..............................................................28

E. The Judgment Should Be Reversed ....................................................29

III. CONCLUSION ..........................................................................29


**CONFIDENTIAL MATERIAL OMITTED**

The material omitted on pages 28 and 29, concerns information designated as "Confidential Information" by the parties under the district court's protective order. In particular, the information relates to testimony offered by party witnesses and experts designated Confidential, and evidence of Defendant's device that it designated Confidential.

# TABLE OF AUTHORITIES

***Page(s)***

**Cases**

*Abbott Laboratories v. Sandoz, Inc.*,
544 F.3d 1341 (2008) .....16

*Apple, Inc. v. Samsung Elecs. Co.*,
678 F.3d 1314 (Fed. Cir. 2012) .....24

*Celsis in Vitro, Inc. v. Cellzdirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012) .....29

*Cordis Corp. v. Boston Scientific Corp.*,
188 Fed. Appx. 984 (Fed. Cir. 2006) ..... 23, 24

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Cont. Corp.*,
635 F.3d 1373 (Fed. Cir. 2011) ..... 23, 24

*Hester Indus., Inc. v. Stein, Inc.*,
142 F.3d 1472 (Fed. Cir. 1998) ..... passim

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. June 27, 2014.) .....22

*In re Amos*,
953 F.2d 613 (Fed. Cir. 1991) ..... 19, 20, 21

*In re Aoyama*,
656 F.3d 1293 (Fed. Cir. 2011) .....19

*In re Mostafazadeh*,
643 F.3d 1353 (Fed. Cir. 2011) ..... passim

*In re Rowand*,
526 F.2d 558 (CCPA 1975) .....19

*In re Smythe*,
480 F.2d 1376 (CCPA 1973) .....20

*In re Wadlinger*,
496 F. 2d 1200 (C.C.P.A. 1974) ..... 3, 5, 14, 17

*In re Wilder*,
736 F.2d 1516 (Fed. Cir. 1984).....4

*In re Youman*,
679 F.3d 1335 (Fed. Cir. 2012)..... passim

*Karlin Tech, Inc. v. Surgical Dynamics, Inc.*,
177 F.3d 968 (Fed. Cir. 1999).....22

*Lampi Corp. v. Am. Power Prods., Inc.*,
228 F.3d 1365 (Fed. Cir. 2000).....23

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004)..... 20, 25

*Martek Biosciences Corp. v. Nutrinova, Inc.*
579 F.3d 1363 (Fed. Cir. 2009).....23

*Medtronic, Inc. v. Guidant Corp.*,
465 F.3d 1360 (Fed. Cir. 2006).....20

*N. American Container, Inc. v. Plastipak Packaging, Inc.*,
415 F.3d 1335 (Fed. Cir. 2005).....18

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
522 F.3d 1299 (Fed. Cir. 2008).....20

*Tronzo v. Biomet, Inc.*,
156 F.3d 1154 (Fed. Cir. 1998).....23

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996).....25

**Statutes**

35 U.S.C. § 251..... 1, 3, 4

35 U.S.C. § 251(a) ..... 4, 16

35 U.S.C. § 251(d) ..... 5, 16

# I. INTRODUCTION

In its opening brief, Antares showed that the asserted reissue claims of the'846 patent are directed to subject matter that was disclosed but not claimed in the original '015 patent. The new claims of the '846 patent cover safety features for locking a pushbutton injection device. That embodiment was never previously claimed in the original '015 patent application nor discussed during its prosecution history, so it could not have been surrendered. Because it was never surrendered, there is no risk that Antares recaptured subject matter. Indeed, the specification does not state that the claimed safety features work only with jets, and even Medac's own expert admitted the safety features are broadly applicable. The features referenced in the original dependent claims relate to a different invention compared to that in reissue claim 31.[1] It was accordingly appropriate for Antares to claim the safety features embodiment of claim 31 through reissue, just as 35 U.S.C. § 251 allows.

Medac, however, offers an interpretation of the recapture rule that would effectively eviscerate a patentee's ability to use reissue applications, contrary to Congress's intent and this Court's prior decisions. One could not correct a patentee's attorney failure "to appreciate the full scope of the invention during prosecution of the original patent application." *In re Youman*, 679 F.3d 1335, 1342

[1] The asserted claims of the '846 patent are 31, 34, 35, and 37. No other claims were at issue below.

(Fed. Cir. 2012); *see also Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1479 (Fed. Cir. 1998). Medac's erroneous interpretation of the recapture rule is most clear in its statement that, "when an applicant seeks through reissue a claim directed to some truly overlooked invention/embodiment/species . . . , that reissue claim ***still must not violate the recapture rule***." (Medac Br. 38, emphasis added.) In other words, Medac contends that because Antares first claimed a "jet" invention, Antares could never claim any other embodiment or invention by reissue without also adding the "jet" limitation into those claims. This is manifestly incorrect.

Consistent with the core purpose of Section 251, when a patentee obtains a patent for claimed invention A in an application that discloses both A and B, it is entirely appropriate for the reissue patent to claim B, without requiring the limitations of claimed invention A be imposed on invention B. The recapture rule kicks in only when the applicant not only failed to claim protection for B in the original application, but actually *surrendered* it in the course of obtaining protection for. Here, the original '015 patent claims focused on needle-assisted jet injectors, but the specification disclosed *separate inventions*: (i) jet injectors and (ii) safety features applicable to more than just jet injectors. Antares timely sought—and the PTO granted—protection for these different safety embodiments.

Medac's argument brushes aside this Court's precedent that a patentee, through reissue, may claim a different invention described in the specification, but not previously claimed. *Youman*, 679 F.3d at 1342; *In re Mostafazadeh*, 643 F.3d 1353, 1361 (Fed. Cir. 2011); *Hester*, 142 F.3d at 1482-83. Indeed, in *In re Wadlinger*, Judge Rich explained,

> This court … has made it clear that a reissue applicant is, at most, prevented by interpretations of the language of § 251, and its predecessor statute R.S. 4916, from obtaining claims which are of the same scope as the claims previously cancelled in the original application. *As for obtaining claims on reissue which are different, no prohibition arises merely because of the language of the reissue statute*.

496 F. 2d 1200, 1207 (C.C.P.A. 1974) (Rich, J.) (emphasis added). The precedent, the MPEP, and Medac's own admissions all confirm that the '846 patent falls precisely within the very protection that Congress intended to give inventors when it enacted § 251. The district court therefore erred in concluding that the recapture rule prohibited Antares from claiming new safety features without imposing the "jet" limitation.

## II. ARGUMENT

When applying for the '846 reissue patent, Antares followed the rules. It sought the benefit of 35 U.S.C. § 251 to obtain claims directed to pushbutton safety features that were previously disclosed but not claimed. Section 251 expressly allows a patentee to seek a reissue of a granted patent "by reason of the patentee

claiming more or less than he had a right to claim in the patent." 35 U.S.C. § 251(a). Indeed, as noted repeatedly by this Court, "[t]he most commonly asserted correctable error is the failure of the patentee's attorney to appreciate the full scope of the invention during prosecution of the original patent application." *Youman*, 679 F.3d at 1342; *see also Hester*, 142 F.3d at 1479; *In re Wilder*, 736 F.2d 1516, 1519 (Fed. Cir. 1984) (same). As the pushbutton safety features involved a different invention, it was entirely permissible to claim them by reissue within the two-year period allowed by 35 U.S.C. § 251.

### A. The Rule Against Recapture Is Inapplicable to Reissue Claims Covering Disclosed But Unclaimed Features Of The Original Patent.

By claiming the pushbutton safety features in the '846 reissue patent, Antares acted within the letter and the spirit of the recapture rule. Antares did not have claims in the original patent directed to pushbutton safety features, and subsequently seek to claim that embodiment in reissue. Under Medac's view, once Antares argued that its original claims were novel because they were "jet" injector claims, Antares could never claim by reissue any features for "injectors"—even those directed to separate inventions—without being compelled to also add the "jet" limitation. Indeed, under Medac's view, a reissue claim could be allowed only if it repeated or further narrowed each and every limitation that appeared in the original patent. Such an approach would cripple the broadening reissue

expressly allowed by 35 U.S.C. § 251(d), even though that statute is supposed to be liberally construed. *In re Wadlinger*, 496 F.2d at 1207.

### 1. Prior Precedent Supports Antares's Position That The Recapture Rule Does Not Apply Here.

The recapture rule prohibits claiming through reissue only that which the patentee "***intentionally surrendered***." But the safety features claimed in the '846 reissue were never previously claimed, discussed, or prosecuted, and thus could not have been surrendered. As discussed below, this is not a case where Antares had claims in the original application directed to pushbutton locks and unlocks, then added the word "jet" to obtain claims, and then removed "jet" in reissue to recover surrendered subject matter. Accordingly, Antares never surrendered the subject matter of claim 31.

#### a. *The rule against recapture does not apply when the reissue claims cover a disclosed but previously unclaimed invention.*

Both *Mostafazadeh* and *Youman* state that the recapture rule simply does not apply when separate inventions (*i.e.*, overlooked aspects) are claimed through reissue. *Mostafazadeh* explained that "the recapture rule is not even triggered" when reissue claims are directed at "additional inventions/embodiments/species not originally claimed." 643 F.3d at 1360 (quoting MPEP). *Youman* similarly confirmed that "[w]hereas the recapture rule applies when surrendered subject

matter is being reclaimed, overlooked aspects by definition were never claimed and thus never surrendered." *Youman*, 679 F.3d at1347.

In its Response, Medac acts as if these statements were never made. It contends instead that the recapture rule always applies, even for overlooked aspects. (Medac Br. 38 ("even for 'truly overlooked' aspects, the reissue claim *still must not violate the recapture rule*.") (emphasis added).

b. *Unlike in* Mostafazadeh *and* Youman, *the '846 reissue claims do not simply reclaim the originally claimed invention.*

In its opening brief, Antares discussed the familiar pattern in the cases that apply the recapture rule. They involved reissue claims that covered the very same invention as that claimed in the original patent, but with deletions or minor modifications related to subject matter that had been previously surrendered. *See Mostafazadeh*, 643 F.3d at 1361(original and reissue patents directed at same invention and change from original to reissue eliminated "circular" attachment pad); *Youman*, 679 F.3d at 1347 (original and reissue both directed at same invention but changed "cycling" channel selection to any "changing"); *Hester*, 142 F.3d at 1483 (reissue changed "solely with steam" to any use of steam, even with other heat sources). None of these cases could have plausibly applied the "overlooked aspects" rule, since what was expressly surrendered cannot have been overlooked.

Antares did not follow this pattern. This is not the *Hester* "steam" case that Medac claims that it is (Medac Br. 40), because Antares did not just remove the word "jet" and otherwise claim the same invention. Instead, the asserted reissue claims refer to a different invention disclosed but not claimed in the original patent. Reissue claim 31 refers to a different safety features embodiment. Because the pushbutton safety features were never previously claimed in connection with any kind of injector, "jet" or otherwise, they could not have been surrendered.

### 2. The Needle Cover Claimed In The Original Patent Does Not Subject Antares's Reissue Safety Features To The Recapture Rule.

For the first time on appeal, Medac asserts that at least some "safety features" "were already claimed in the original '015 patent," assertedly preventing Antares from separately claiming any other safety features without a "jet" limitation. (Medac Br. 39.) While brand new (and therefore not a proper alternative ground for affirmance), Medac's assertion that "claims 15-18 included limitations related to safety features" is irrelevant. (Medac Br. 25.) Medac still does not argue, nor could it, that Antares claimed through reissue the *same* safety features from the original patent. More importantly, Medac does not assert that Antares originally tried to claim a locked pushbutton that unlocked when a needle guard retracted. The recapture rule does not apply to these safety features.

In fact, dependent claims 15-18 of the original ’015 patent confirm that Antares claimed a different, unrelated, and previously unclaimed embodiment in the ’846 reissue patent. The original claims and the reissue claims refer to two different embodiments that work in different and inconsistent ways. Claim 16 refers to a needle guard and claim 17 refers to it as an activation device. In contrast, reissue claim 31 claims the pushbutton as the activation device.

These claims are not just different in scope; they correspond to different embodiments disclosed in the patent specification. Claims 15-18 correspond to the embodiment described in columns 3-4 of the patent specification. For example, column 3, lines 39-40 refer to the “activation element operatively associated with the needle guard” and claim 17 recites “an activation element operatively associated with the shield.” (A99, A105.) Reissue claim 31, in contrast, tracks a different embodiment described in column 12. (A103.) Unlike the column 3 embodiment, which is activated when the needle guard is retracted, column 12 describes using the needle guard to unlock a pushbutton. *Id*. Here it is the pushbutton, located at the rear of the injector, that fires the device. This alternate embodiment is summarized as follows:

> Alternatively, a push button could be located at the proximal end of the device and be locked in an idle position. The movement of the needle guard 540 could unlock the push button and allow the user to depress it and consequently fire the device.

(*Id*. at 12:9-14.) The reissue claims relate specifically to this pushbutton embodiment, requiring "a *pushbutton* located at the proximal end," "wherein movement of the needle guard communicates with and unlocks the *pushbutton*," and the device is fired "by depressing the *pushbutton* to activate the latch and release the spring." (A105-06, claim 31.) The original claims, in contrast, do not mention a pushbutton, much less the other "latch" or "unlocks the pushbutton" limitations in claim 31. There is no locking or unlocking feature at all in the original claims. The locked pushbutton configuration of claim 31 is materially different in its structure and operation compared to that in claims 15-18, and refers to a different embodiment and different invention—which were neither claimed nor surrendered in the original patent.

#### 3. Antares Has Accordingly Shown A Likelihood of Success on the Merits, Warranting Reversal.

This case, therefore, fits the exemption described in *Mostafazadeh*, *Youman*, and the MPEP. *Mostafazadeh* and *Youman* state the rule that Antares seeks to apply in this case. Specifically, "the recapture rule is not even triggered" when the reissue claims relate to subject matter "not originally claimed" and "wholly unrelated to the subject matter that was surrendered during prosecution." *Mostafazadeh*, 643 F.3d at 1360. *Mostafazadeh* made clear that there is a separate path—avoiding the recapture rule altogether—because if there are "reissue claims

directed at additional inventions/embodiments/species not originally claimed," then "there is no need to apply the recapture rule in the first place."[2] *Id*.

*Youman* similarly reported that the "overlooked aspects" question is a "separate inquiry under reissue that is *independent* of whether or not the recapture rule applies." 679 F.3d at 1347 (emphasis added). According to Medac, this means that claiming overlooked aspects is entirely irrelevant, so that when a claim is "directed to some truly overlooked invention/embodiment/species that was disclosed but not originally claimed, that reissue claim still must not violate the recapture rule." (Medac Br. 38.) That is backwards. In the immediately preceding sentence, *Youman* explained that "[w]hereas the recapture rule applies when surrendered subject matter is being reclaimed, *overlooked aspects by definition were never claimed and thus never surrendered*." 679 F.3d at 1347 (emphasis added). *Youman* cited *Mostafazadeh* to support this proposition.

*Mostafazadeh* and *Youman* define a clear rule of law that reissue claims directed to different inventions, disclosed but not previously claimed, avoid the recapture rule. This is consistent with the balanced policy behind § 251, because a patentee can and should be allowed to claim subject matter that was previously disclosed but not claimed. Indeed, *B.E. Myers & Co. v. United States*, a Federal

[2] Medac accuses Antares of misstating the law in asserting that *Mostafazadeh's* holding means there is a "threshold" requirement to applying the recapture rule. But if a rule "is not even triggered" when an exemption applies, then as a matter of both law and logic, it makes sense to review the exemption first.

Claims case referenced in the MPEP, further supports this rule of law. 45 Fed. Cl. 200 (2000). In *Meyers*, the patentee originally claimed a night-vision device with "pulsing circuitry," and then by reissue sought to claim a separate invention—a "lens" claim without requiring pulsing circuitry. *Id*. at 207. The court recognized that the patentee was not trying to recapture non-pulsing circuitry as in the original claims, but was instead claiming a different, separate invention. The court discussed *Hester* and held the recapture rule did not apply, because "[t]he subject matter protected in the new independent reissue claims dealt only with the lens system; it had nothing to do with any type of pulsing circuitry." *Id*. There was no recapture, since the patentee "still cannot rely on its reissue claims to protect any type of pulsing circuit design that is taught by the prior art," just as Antares does not claim any prior art injector, but only those that use the pushbutton safety features. There is, in short, no support for Medac's proposed rule.

This case is just like the MPEP examples (A968–69), which Medac fails to distinguish. Medac instead observes that the MPEP is not law. (Medac Br. 39 n. 5.) Antares relied on the MPEP not as a statement of law, but rather for examples that reflect "administrative constructions" that Medac acknowledges are "entitled to deference." *Id*. Both *Mostafazadeh* and *Youman* approvingly refer to the MPEP. *E.g.*, *Mostafazadeh*, 643 F.3d at 1360. In addition, the MPEP provides

illustrative examples of the "overlooked aspects" doctrine, citing *Mostafazadeh*, and *Youman*. (A968.)

Medac mischaracterizes *Mostafazadeh* as though it in fact applied the "overlooked aspects" doctrine. (Medac Br. 45 (asserting the decision related to "three supposedly overlooked limitations that were unrelated to the surrendered limitation")). As noted above, claiming a different embodiment was not the issue in *Mostafazadeh* because the reissue claims were directed to the same invention as the originally issued claims. To the contrary, the Court noted that "overlooked aspects" was irrelevant, since the doctrine "deals with claims in which there is no need to apply the recapture rule in the first place." 643 F.3d at 1360. *Mostafazadeh* did consider three limitations added to the reissue claims, but only under the third step of the recapture rule, *i.e.*, whether there had been a "material narrowing" of the claim. *Mostafazadeh* held that any material narrowing had to be related to the surrendered subject matter, and that because the narrowing limitations were "unrelated to the surrendered subject matter," they were "thus insufficient to avoid recapture" under the third step of the rule. *Id*. at 1361.

Medac next points out that the column 12 pushbutton safety features are described in connection with a jet injector embodiment. That is true, so far as it goes, but the specification does not describe those features as necessarily part of a jet injector, nor that they would work *only* with jet injectors. Indeed, Medac's own

expert admitted that "you could use a push button like that in non-jet injectors or non-needle assisted jet injectors," (A867 at 232:2-13) and that the same was true for the other safety features found in claim 31. (*Id.* at 231:4-17, 233:15-23.) Medac's only response is that "Mr. Leinsing's testimony simply confirms that the safety features … do not materially narrow the injection element of the reissue claims to avoid recapture." (Medac Br. 38 n.4.) This is no response, as it fails to address the separate embodiment issue. As to that issue, the same footnote concedes that "the safety features at issue are unrelated to the surrendered jet limitation." (*Id.*) That should end the "overlooked aspects" inquiry: if the features are unrelated and were previously unclaimed in the original patent, then they can be separately claimed by reissue.

Under Medac's interpretation of the recapture rule, any claim to any feature that can be used with a non-jet injector violates the recapture rule, even if unrelated to jet injectors or their performance, and unrelated to the arguments or amendments made during the original patent prosecution. Medac did not attempt to distinguish the "race car" analogy in Antares's opening brief, where a patentee might claim a turbo engine in the original patent and surrender non-turbo engines in the context of that claim, but then later claim through reissue a separate windshield wiper improvement that could be used in cars with or without turbo engines. If it were up to Medac, such a patentee could only claim the windshield wiper limited to cars

with a turbo engine. That makes no sense. The rule Antares seeks to apply—the same rule articulated in *Wadlinger, Mostafazadeh, Youman* and *Meyers*—is that if there is a different invention that was not originally claimed, then it was never surrendered and the recapture rule is not an issue.

#### 4. The Prosecution History Shows that Recapture is Inapplicable.

The prosecution histories of the original ’015 and reissue ’846 patents show that Antares never surrendered the pushbutton safety features, whether for a jet or not. Rather than merely substitute or omit “jet” from safety feature claims and leave everything else the same—which would have invoked the pattern in *Hester*, *Mostafazadeh*, and *Youman*—Antares instead first claimed the “jet” embodiment and then separately claimed safety features.

As discussed in its opening brief, Antares separately distinguished the same Kramer prior art reference for both the original and reissue claims. During prosecution of the ’015 patent, the focus of the distinction was on the “jet” aspects of the invention, including pressure and speed. During prosecution of the ’846 reissue claims, however, the focus was entirely on the combination of safety features. (Br. at 30-31; A599-602.)

Medac’s attempt to cloud this clear record is unavailing. Medac asserts that the Examiner did not need to require adding “jet” to the reissue claims because “Antares already had surrendered non-jet injectors.” (Medac Br. 52.) Not so. If

Antares had already surrendered inventions related to all non-jet injectors—meaning the Examiner understood those were not being claimed—then Antares would not have needed to separately distinguish Kramer during the reissue prosecution. Instead, the allegedly implied "jet" distinction would have been enough, and the PTO would not have re-asserted Kramer against the new reissue claims.

Medac next asserts—through yet another argument first raised on appeal—that Antares distinguished original claim 17 on the grounds of a safety feature during the '015 prosecution. (Medac Br. 52.) But even the passages that Medac quotes prove the opposite. As discussed in section II.A.2 above, claim 17 refers to using the needle guard to activate the device. The prosecution history Medac quotes specifically notes that "claim 17 recites an activation element…upon retraction of the shield" which was "contrary to the teaching in Kramer." (A654.) In contrast, claim 31 is different, and refers to the pushbutton to activate the device and release a latch. (A106.) It was distinguished because Kramer does not teach a spring held "by a latch located within the proximal end of an outer housing before the needle guard moves toward the retracted position." (A600-01.) Moreover, claim 31 was further distinguished over Kramer based on limitations not present in any claim of the original patent, including "a pushbutton…in activating

communication with the latch" and "movement of the needle guard [that] unlocks the pushbutton." (A602.)

And while Medac finds significant that the appellate record does not contain the full prosecution history (with the inventors' sworn declarations affirming that the inventors claimed less than they had a right to claim), Medac overlooks the fact that it was Medac's burden to show a § 251 violation. Medac chose to argue that Antares surrendered subject matter by argument, without disputing that Antares had an adequate basis to seek a reissue. *See Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341, 1364 (2008) ("[T]he standard is the likelihood of success of the plaintiff at trial, with recognition of the presumptions and burdens."). Medac did not argue that Antares left out the pushbutton safety features intentionally, under 35 U.S.C. §251(a). Instead, Medac referred to the recapture rule and the original patent doctrine under § 251(d), and as to either of those issues, Medac points to no rejections by the Examiner because none exist.

### 5. Antares Has Shown A Likelihood of Success Even Under *Hester*.

Medac falls back on *Hester*, contending the "overlooked aspects" doctrine is really only an example of a "materially narrowed" claim from step three of the recapture rule analysis. (Medac Br. 40-41.) The reissue claim in *Hester* related to the very same invention as the original claims, except it eliminated the limitation "solely with steam" and recaptured any use of steam even if combined with other

heat sources. *Hester*, 142 F.3d at 1482. This presented a straightforward recapture rule violation. As such, this Court applied the routine three-step recapture rule test.

When it came to step three of the recapture rule, *Hester* considered whether the reissue claims were "materially narrower in other overlooked aspects of the invention" and found that other added limitations were actually aspects already "included in original claim 1." *Hester*, 142 F.3d at 1482-83. Accordingly, these limitations could not be the basis for any material narrowing and Hester was unable to argue that they were "overlooked." *Id*. The Court accordingly held "this is not a case which involves the addition of material limitations that overcome the recapture rule." *Id*. at 1483.

Given *Hester*'s facts, there was no need to consider what would happen if a patentee sought to claim a separate invention in a reissue application. As to that question, later decisions have made clear that the "overlooked aspects" doctrine completely avoids the recapture rule. *Mostafazadeh* was not the first to distinguish overlooked aspects from the recapture rule, as Medac seems to imply. Instead, the CCPA provided consistent guidance in *Wadlinger*, a case Antares cited in its opening brief for the proposition that "different" claims on reissue were not prohibited by Section 251. Antares Br. 25, citing *Wadlinger*, 496 F. 2d at 1207. Medac failed to cite or discuss *Wadlinger*. Similarly, even though *Meyers* considered *Hester* and did not have the benefit of *Mostafazadeh* and *Youman*, it

still found that separate inventions avoid the recapture rule. *Meyers*, 47 Fed. Cl. at 207.

In the alternative, and even if *Hester* means that an "overlooked aspects" doctrine is part of step three of the recapture rule analysis, this Court should still reverse. *Hester* itself provides reason enough to determine whether the reissued claims refer to a separate invention. After all, unlike *Mostafazadeh* and *Youman*, which make clear that any material narrowing of step three must be "relative to the surrendered subject matter,"[3] *Hester* does not have that requirement and instead states more generally that one may "overcome the recapture rule when the reissue claims are materially narrower in other overlooked aspects of the invention." 142 F.3d at 1482-83. Thus, any narrowing—so long as it is material—is enough under *Hester*. For all the reasons discussed above, the '846 reissue claims added materially narrowing limitations that refer to the different safety feature embodiment of claim 31, including the pushbutton, latch, and unlocking mechanism.[4]

[3] *Mostafazadeh*, 642, F.3d at 1361-62; *Youman*, 679 F.3d at 1347 both *citing N. American Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1350 (Fed. Cir. 2005).

[4] Medac asserts that Antares knew Medac was developing some autoinjector and "[a]rmed with that knowledge, Antares filed new independent reissue claim 35." (Medac Br. 27-28.) There is no basis in the record that Antares pursued its claims with an eye toward Medac.

Accordingly, under either the *Mostafazadeh*/*Youman* approach or the *Hester* approach, claim 31 does not violate the recapture rule. Medac cherry picks inconsistently between the two sets of cases to craft a rule neither supports. It argues that *Hester*—and the district court—properly applied "overlooked aspects" in step three of the traditional three-step recapture analysis, but then relies upon the restrictive use of "materially narrowing" that *Mostafazadeh* and *Youman* prescribe. (Medac Br. 35.) If *Hester* controls, then the limitations of claim 31 are appropriate to materially narrow the claim relative to claim 1 because they relate to overlooked aspects. If *Mostafazadeh*/*Youman* controls, then "overlooked aspects" is a threshold determination addressing whether there is a need to apply the recapture rule at all. *Mostafazadeh*, 643 F.3d at 1360. Under either analysis, this Court should reverse.

### B. The "Original Patent" Doctrine Is not an Alternative Basis to Affirm

Medac contends that the '846 reissue claims violate the "original patent" requirement, but unresolved, disputed issues of fact preclude affirmance on this ground. Unlike the definiteness requirement addressed in *In re Aoyama*, 656 F.3d 1293, 1301 (Fed. Cir. 2011)—a question of law—the original patent issue "is an essentially factual inquiry confined to the objective intent manifested by the original patent." *In re Amos*, 953 F.2d 613, 618-19 (Fed. Cir. 1991) (quoting *In re Rowand*, 526 F.2d 558, 560 (CCPA 1975)); *see also Meyers*, 47 Fed. Cl. at 208.

Indeed, the original patent test is "analogous to the analysis required by § 112 ¶ 1," *id.*, the written description requirement, which also turns on questions of fact. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008). Citing *Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1373 (Fed. Cir. 2006), Medac contends that the "original patent" requirement is "an issue of law under §251," (Medac Br. 51), but *Medtronic* involved the recapture rule, which is a question of law, and not the original patent requirement.

Medac is wrong on the merits. "The essential inquiry under the 'original patent' clause of §251 [] is whether one skilled in the art, reading the specification, would identify the subject matter of the new claims as invented and disclosed by the patentees." *Amos*, 953 F.2d at 618. And one skilled in the art, as Medac's expert admitted, would recognize that those safety features could be used in jet and non-jet injectors. Thus, the reissue claims, even though not limited to jet injectors, are fully described by the specification. *See, e.g., Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (rejecting principle that "if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment"); *In re Smythe*, 480 F.2d 1376, 1384 (CCPA 1973) (finding claims to "inert fluid" supported by "air or other gas" since disclosed properties and functions would be understood to apply to fluids more generally).

In the district court, Medac relied on the inventors' *subjective* intent. *See* Medac Opp. to PI 14 ("the inventors expressed a clear intent"). This Court has already rejected the intent theory in the very case upon which Medac now relies. *Amos* held that Section 251 does not include an "intent to claim" requirement. 953 F.2d at 618–19. *Amos* further makes clear that finding "subject matter was 'not originally claimed, not an object of the original patent, and not depicted in the drawing,' does not answer the essential inquiry." *Id*. Medac thus did exactly what *Amos* said was insufficient: it argues that the '846 patent discloses jet injector examples, and Antares's claims should be therefore limited to jet injectors. That is not a written description argument.

Under the proper inquiry, Medac does not dispute that the specification discloses the pushbutton safety features found in claim 31. In fact, as discussed above, the features correspond to the disclosure in column 12, lines 9-14 of the '846 patent.[5] Thus, the '846 patent does identify "the subject matter of the reissue claims as invented and disclosed by the patentee," so Antares did not violate the "original patent" rule. *Hester*, 142 F.3d at 1485.

Medac then asserts that the '846 patent's use of the "present invention" should limit the scope of the claims. (Medac Br. 48.) Again, that is not a written

---

[5] Medac argues that "Antares did not even try to address" the original patent argument (Medac Br. 46), yet then acknowledges that Antares addressed in the same section the original patent and recapture analyses. (*Id*. 46-47.)

description issue. Even as to claim construction, however, the usage of "present invention" in the '846 patent is not in the form of a disclaimer, such as "the present invention is" or "all embodiments of the present invention are." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367 (Fed. Cir. June 27, 2014.)

In the context of the '846 patent, the phrase "present invention" is used to refer to a preferred embodiment, and not a disclaimer. *See Karlin Tech, Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 973 (Fed. Cir. 1999). The '846 patent states that the "present invention relates to" various features and other times an "embodiment of the present invention." The "Field of Invention" states "[t]he present invention is directed to a device for delivery of medicament, and in particular to a jet injector[.]" (A98, 1:22-27.) The "Summary of the Invention" begins by stating that "[t]he present invention relates to a needle assisted jet injector," and Medac focuses on the words "jet injector," but the bulk of the specification is directed to structure to accommodate and protect against the "needle." (A98-100, 2:53-5:2.) As the "Background of the Invention" makes clear, prior art jet injectors did not use needles. The patent therefore discloses using a needle with a jet injector, and also discloses safety features related to the needle.

The safety features were not taught as somehow being useful *only for* jet injectors or that the safety features solved some jet-specific problem. Medac

admits this by stating that those features are unrelated to the jet features. (Medac Br. 38 n.4.) Thus, a patent claim is not necessarily invalid for lack of written description just because it claims more than the examples disclosed. *Martek Biosciences Corp. v. Nutrinova, Inc.* 579 F.3d 1363, 1371 (Fed. Cir. 2009). For example, in *Lampi Corp. v. Am. Power Prods., Inc*., 228 F.3d 1365, 1377-78 (Fed. Cir. 2000), this Court affirmed a finding that a disclosure emphasizing "identical half-shells"—in a fluorescent lamp component—was sufficient to support claims directed to half-shells that were not identical because one of ordinary skill in the art would understand that identity was not essential. So too here, a person of skill would understand that the pushbutton safety features could be used with either a jet or non-jet injector, just like Medac's own expert did. (A867 at 231:4-17, 232:2-13, 233:15-23.)

Medac relies upon *Tronzo v. Biomet, Inc*., 156 F.3d 1154, 1159 (Fed. Cir. 1998), which did involve written description and found that the patent did not disclose "shapes other than conical." The Court has distinguished *Tronzo* where, as here, the patent addresses different problems to be solved. *See Cordis Corp. v. Boston Scientific Corp.*, 188 Fed. Appx. 984, 990 (Fed. Cir. 2006) ("when a patent includes two inventive components, particular claims may be directed to one of those inventive components and not to the other"); *Crown Packaging Tech., Inc. v. Ball Metal Beverage Cont. Corp.*, 635 F.3d 1373, 1382 (Fed. Cir. 2011) ("solving

one [problem] does not necessarily require solving the other" where the patent does not "necessarily require[]" all of the disclosed features). As in *Cordis* and *Crown*, Antares disclosed performance criteria like the jet feature, and safety features like the pushbutton interlock. These features addressed separate problems, and the patent does not require the pushbutton features to be used only with jet injectors. Antares met the "original patent" requirement.

At most, on the present record, the original patent question should be remanded, consistent with Medac's acknowledgment "it would 'not [be] appropriate for this court to make such highly factual inquiries for the first time on appeal.'" Medac Br. 64-65 (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1332 (Fed. Cir. 2012)); *see also Meyers*, 47 Fed. Cl. 208 (denying summary judgment on original patent issue when testimony and expert evidence had not been submitted).

## C. Medac's Claim Construction Position Is Incorrect

### 1. The '846 Reissue Patent Claims Should Not Be Limited to Jet Injectors.

The "injection device" of claim 31 is broad enough to cover any type of automated injection device, and not limited to jet injectors. Medac argues that the embodiments of the '846 patent show only jet injectors, so the claims should all be so limited. But this Court has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as

being limited to that embodiment." *Liebel-Flarsheim*, 358 F.3d at 906. As discussed in Section B, "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expression of manifest exclusion or restriction.'" *Id.* (citation omitted). The safety features of claim 31 do not depend on any "jet" property or performance, and a person of ordinary skill in the art would appreciate—as Medac's expert did—that this distinct and separate configuration does not require using the underlying jet example on which it is depicted. (*See* A867 at 231:4-233:23.)

### 2. Even If Limited To A Jet Injector, The District Court Did Not Use The Patent's Proper, Explicit Definition.

Even if claim 31 were limited to a "jet injection device," the district court still erred in accepting Medac's proposed construction. That is because the '846 patent contains an express definition different from the court's construction. Medac claims that "Antares's criticism of the District Court's construction of 'jet injector' is premised entirely on a single sentence appearing in the '846 patent specification." (Medac Br. 54.) But a single sentence is sufficient when it is an express definition, and Medac nowhere disputes that the '846 patent contains one. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). That definition is "a particular class of injector that injects medicament by creating

a high-speed jet of the medicament that penetrates the tissue of the patient to a distance beyond the exit of the injector." (A100, 6:22-26.)

Medac defends the district court's construction as "consistent with the 'definition' that Antares asserts." (Medac Br. 56.) Not so. The district court's construction draws from an unrelated patent[6] and adds additional limitations beyond the express definition, including the requirement "that the medicament exits the needle tip as a fluid jet and not as a bolus," and these were the limitations the district court relied upon to find non-infringement. (A5, A7.) Medac refers to other intrinsic evidence (Medac Br. 55), and even extrinsic evidence (*id*. at 55-56), but those do not trump the express definition in the specification itself. Indeed, they support the express definition, since the prosecution history statements cited by Medac explain that a jet can inject fluid with more than just a "bolus" (which is not a particular shape, but any fluid released at the needle tip *without* added pressure) "to penetrate through a depth of tissue." (A558.) The express definition for a "jet injector" reflects this same distinction. For a jet injection, fluid pressure is used to "penetrate" tissue, which was distinguished from prior art where "medication merely flows through the cavities" by dispersion. (*Id*.)

[6] The district court used the same construction for the '846 patent as it did for another, but unrelated, Antares patent. Thus, the claim construction discussion was in the context of the '631 patent, but also applied to the '846 patent with non-infringement considered "[a]s discussed above in the analysis of the '631 patent." (A16.)

Medac clearly infringes under the proper construction, since all the evidence shows that its injector penetrates further than a manual injector. Medac attempts to reduce Antares's argument to absurdity by taking out the comparison aspect and stating that any needle might release fluid extending literally "beyond the end of the needle." (Medac Br. 58.) But that is not what the express definition states: a jet must use enough pressure so that the injector uses fluid to penetrate tissue, rather than simply releasing fluid at the needle tip. (A100, 6:22-26.) While Medac selectively relies on inventor testimony, which is irrelevant, it completely ignores the core point that the inventor repeatedly made during his deposition: a "comparison" between an automatic and manual device would show further penetration that meets the "jet" definition. (A524-27, 90:19-93:19.) Antares's inventor testimony was corroborated by Medac's own expert. (A858, 52:22-53:5.) If an auto-injector delivers drug further past the needle tip compared to a manual injector, it meets the definition.

That comparison is shown in all of the infringement evidence. Indeed, it is not even disputed in the clinical data reported in Becton Dickinson's study, as there are four instances shown of actual infringement, although Medac refers to its statistical significance. (Medac Br. 60-61.) Statistics, however, are not the test for infringement, and this case involves real not "theoretical" infringement as Medac argues. (Medac Br. 61 n.10.) Infringement is also supported by the injection tests

into ballistic gel that both Antares's and Medac's experts submitted to the district court. (Medac Br. 59-60.) Those show that the Medac auto-injector injects fluid deeper than a manual injector. Hence, under the proper construction, Medac's proposed product infringes claim 31 of the '846 patent even if the "jet" limitation is added.

### D. Antares Faces Irreparable Harm If Medac Is Allowed To Launch Its Infringing Device

The district court's irreparable harm finding was based on evidence showing that "the launch of a competing product would force the renegotiating of the current tier and pricing structure," that Antares would suffer "price erosion," and that Medac's launch would "threaten[] Antares's' brand." (A16.) Medac's Response suggests that the district court's finding was based on whether "Medac's RASUVO™ product should be regarded as a generic version of [Antares's] OTREXUP™ and that, once Medac received FDA approval, Medac would price its product as a generic." (Medac Br. 62.) That is simply incorrect. Medac refers to page 15 of Antares's preliminary injunction brief (A384), which in turn references declarations of Antares's employees Schneider and Apple. [redacted]

[redacted] The "bid" problem—affecting the tier structure insurers use—is exactly what the district court found to be persuasive evidence, evidence that remains unrebutted on appeal. *See also Celsis in Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (lost sales of "flagship products…in their growth phase" supported irreparable harm).

### E. The Judgment Should Be Reversed

Medac also disputes Antares's request for relief, asserting that if Antares prevails, the case should be remanded. (Medac Br. 63-64.) In light of Medac's assertion that it seeks to reargue its non-infringement and anticipation/obviousness arguments (*Id*. 64), Antares agrees that the proper relief if it prevails on appeal is for the Court to vacate and reverse the district court's opinion and remand for further expedited proceedings consistent with the Court's opinion. (Medac Br. at 65.)

## III. CONCLUSION

The district court's order should be vacated and the motion for preliminary injunction remanded for further expedited proceedings consistent with the Court's opinion.

Respectfully submitted,

/s/ Imron T. Aly
Imron T. Aly
Richard J. Hoskins
Sailesh K. Patel
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 6600
Chicago, IL 60606
(312) 258-5500

*Attorneys for Plaintiff-Appellant Antares Pharma, Inc.*

**United States Court of Appeals**
**for the Federal Circuit**
*Antares Pharma Inc. v. Medac Pharma Inc.*, 2014-1648

**CERTIFICATE OF SERVICE**

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by Schiff Hardin LLP, attorneys for Appellant to print this document. I am an employee of Counsel Press.

On the **22nd Day of August, 2014**, counsel has authorized me to electronically file the foregoing corrected **Reply Brief for Plaintiff-Appellant (Confidential and Non-Confidential versions)** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of the filing to all counsel for the parties registered as CM/ECF users, including any of the following:

Christopher J. Harnett
(Principal Counsel)
Ching-Lee Fukuda
James F. Haley, Jr.,
Hassen A. Sayeed
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000
christopher.harnett@ropesgray.com
ching-lee.fukuda@ropesgray.com
james.haley@ropesgray.com
hassen.sayeed@ropesgray.com
*Counsel for Appellees*
*Medac Pharma Inc., et al.*

Confidential copies will also be mailed and emailed to the above counsel on this date.

Six paper confidential copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules. The brief was originally filed as confidential and non-confidential versions on July 25, 2014. This corrected version is being filed at the Court's request.

September 19, 2014

/s/ Robyn Cocho
Counsel Press

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

__X__ The brief contains 6,907 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

____ The brief uses a monospaced typeface and contains ______ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

__X__ The brief has been prepared in a proportionally spaced typeface using MS Word 2010 in a 14 point Times New Roman font or

____ The brief has been prepared in a monospaced typeface using ________ ___________in a ___ characters per inch_________ font.

August 22, 2014

/s/ Imron T. Aly
Imron T. Aly
SCHIFF HARDIN LLP
*Attorneys for Plaintiff-Appellant*
*Antares Pharma, Inc.*